| | |
|---|---|
| In re:<br><br>HIAWATHA MANOR ASSOCIATION, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-01916<br><br>Hon. Randal S. Mashburn |
| HIAWATHA MANOR ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CAROL JO CARRARA, *et al.*,<br><br>Defendants. | Adv. Pro. 2:25-ap-90052 |

**UNSWORN DECLARATION OF ALEXANDER KRAKOVSKY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AND ENTRY OF SUMMARY JUDGMENT**

In accordance with 28 U.S.C. § 1746, I, Alexander Krakovsky, respectfully state the following:

1. My name is Alexander Krakovsky, and I am an adult of sound mind.

2. I am the Chief Executive Officer of HPP Property Services LLC, d/b/a Lemonjuice Solutions ("**Lemonjuice**"), the management company to the above-captioned debtor and debtor in possession (together, the "**Debtor**").

3. Except as otherwise indicated, all facts set forth in this affidavit are based upon my personal knowledge, upon relevant documents and information supplied to me by people who report to me or are officers or employees with the Debtor, upon information supplied to me by the Debtor's professionals, or upon my opinion based on my experience and knowledge with respect to the Debtor's business, finances, and operations.

4. I have been involved with the ongoing marketing and sale process (the "***Sale Process***") of (i) that certain 47-unit (each a "***Unit***" and collectively, the "***Units***") development located at 8005 Cherokee Trail, Crossville, Tennessee 38572, which is commonly known as the Hiawatha Manor Resort (the "***Hiawatha East Property***") and (ii) that certain 70-unit development located at 8007 Cherokee Trail, Crossville, Tennessee 38572, which is commonly known as the "Hiawatha Manor West" ("***Hiawatha West Property***," and together with Hiawatha East Property, the "***Properties***").

5. As of today, based on the feedback from the Debtor's broker, HREC Investment Advisors, and the Debtor's auction platform, Commercial Real Estate Exchange, Inc. ("***Crexi***"), the estimated sale value for the Hiawatha East Property is $2,000,000 and the estimated sale value for the Hiawatha West Property is $3,000,000.

6. In my professional opinion, prolongation of the time before the sale can take place will have a negative impact on the value of the Properties due to increasingly cumulative deferred maintenance.

7. Delay will also further decrease the amounts available for distribution to co-owners, because the Debtor continues to incur carrying, legal, and administrative costs during the pendency of these proceedings.

8. Based upon the aggregate sale estimates and expected expenses, I believe:

a. the Debtor will receive approximately $998,940 from the sale of the Properties, which the Debtor will use approximately $238,158 to meet its obligations before distributing the remainder to the individual co-owners of the Hiawatha East Property in addition to the distribution based each co-owner's direct share interest in the property;

b.	the individual Unit co-owners of the Hiawatha East Property will receive approximately $622 each from the sale of the Hiawatha East Property; and

c.	the individual Unit co-owners of the Hiawatha West Property will receive approximately $1,868 each from the sale of the Hiawatha West Property.

9.	Based upon the current market conditions and my personal knowledge and experience, I believe the value of individual timeshare intervals at both properties is negative.

10.	This may sound like hyperbole, but it is not, because the carrying costs, liability and inherent waste associated with owning such intervals are greater than the value of their use.

11.	This conclusion is based upon the following information:

a.	in 2024 and 2025, the developer gave to the Debtor at no cost all 2,005 intervals the developer owned in Hiawatha East after not being able to sell them for years and failing to pay maintenance fees for more than three years;[1]

b.	in 2020, the developer gave to Hiawatha West's homeowners association at no cost all of the developer's remaining intervals;[2]

c.	the developer was and still is a professional timeshare sales organization that is not in any kind of financial distress to the best of my knowledge;

d.	similarly, since 2020, three hundred sixteen (316) owners have deeded back their weeks to the Debtor and approximately seven hundred (700) owners deeded back their weeks to Hiawatha West's homeowners' association;[3]

---

[1] True and correct copies of the deeds evidencing these transfers may be reviewed at https://airtable.com/appZcmJNkshQMyuyw/shrvD79XNsv4aMX30.
[2] True and correct copies of the deeds evidencing these transfers may be reviewed at https://airtable.com/appZcmJNkshQMyuyw/shridMuwCGlSUJR2L.
[3] True and correct copies of the deeds evidencing these transfers may be reviewed at https://airtable.com/appZcmJNkshQMyuyw/shr2RtO0oRsFcrQ3t.

3

e.    in each instance an owner deeded back their week, the owner was required to be current on maintenance fees, pay a "deed-back fee" in an amount between two hundred dollars ($200) and one thousand five hundred dollars ($1,500), and pay approximately five hundred dollars ($500) in legal fees to relinquish their ownership interest.

f.    title searches have identified one hundred ninety-eight (198) intervals across Hiawatha East and Hiawatha West that are owned by string buyers, which are individuals and legal entities that acquire timeshare intervals from owners without any intention of paying maintenance fees; and

g.    these string buyers are usually associated with timeshare relief companies that offer timeshare owners the service of transferring their intervals to such string buyers for a fee typically ranging between two thousand dollars ($2,000) and five thousand dollars ($5,000).

12.    In my professional opinion, co-owners have deeded back to the Debtor and Hiawatha West's homeowners association or otherwise paid timeshare relief companies to dispose of their ownership interests because the owners (a) had no other manner in which to sell their ownership interests and (b) the amounts paid by the owner was a fair estimation of the negative value of their ownership interest.

13.    Each owner's decision is consistent with trends in the timeshare industry more broadly, too.

14.    In any industry, it is fundamental to good economics that some operations become unsustainable and need to be repurposed for higher and better use.

15.    The timeshare industry has historically been resistant to closing timeshares, resulting in gridlock of small pieces owned as deeded real estate, with restrictions developed

4

decades ago, without any consideration that someday an end may be needed, making it difficult to repurpose.

16. This created what is known in economics as a "tragedy of the anti-commons" where too many owners of a single resource create a situation of underuse, gridlock and waste.

17. This gridlock created bad optics for timeshares overall, resulting in a non-existent or nearly non-existent market for the purchase and sale of timeshare interests.

18. This is seen more broadly in trends of other timeshare companies, including bankruptcy filings regarding other timeshare properties. *See, e.g.*, *In re Fairfield Williamsburg Property Owners Association, Inc.*, No. 25-51179-SCS (Bankr. E.D. Va. filed Dec. 5, 2025); *In re Skyline Tower Resort Vacation Condominium Association, Inc.*, No. 25-22156-ABA (Bankr. D.N.J. filed Nov. 15, 2025); *In re Orlando International Resort Club Condominium Association, Inc.*, No. 25-06813-GER (Bankr. M.D. Fla. filed Oct. 23, 2025); *In re Newport Overlook Association, Inc.*, No. 25-11000 (Bankr. D.R.I. filed Dec. 17, 2025); *In re Star Island Vacation Ownership Association, Inc.*, No. 25-07207-GER (Bankr. M.D. Fla. filed Nov. 6, 2025).

19. In some instances, timeshare companies have simply closed the resort, indicating a belief that operation of the property is a greater loss than simply shuttering it. *See* https://clubwyndham.wyndhamdestinations.com/us/en/resorts/resort-news/2025/your-resort-portfolio-refresh.

20. General property conditions at Hiawatha East and Hiawatha West also demonstrate the benefits of a sale are greater than the burdens.

21. At the Hiawatha East Property, nine of the remaining units are shuttered due to structural damage.

22. At the Hiawatha West Property, thirty-seven units—more than half the units—are closed due to life safety or structural issues.

23. Photographs of the current condition of both Hiawatha East and Hiawatha West are attached as Exhibit A.

24. In my professional opinion, without major investment, this degradation will continue to the point where no restructuring or repositioning can be achieved.

25. Over the past several years, Lemonjuice has declined to take on some properties simply because the physical degradation was so extensive that there was not enough value remaining to support or otherwise warrant a restructuring or repositioning.

26. In some cases, owners and boards walked away, and the properties were left as blight for the communities and hopefully tax collectors to address.

27. Photographs of exemplar properties are attached as Exhibit B, illustrating the likely outcome if no sale process is pursued and consummated in this case.

28. Finally, the ongoing carrying costs of Hiawatha East and Hiawatha West support the conclusion that a sale of the whole is a greater benefit than burden to owners.

29. With respect to the Hiawatha East Property, the average annual operating expenses per current owner of a one-week timeshare are approximately $1,113.

30. With respect to the Hiawatha West Property, the average annual operating expenses per current owner of a one-week timeshare are approximately $2,287.

31. The operating expenses do not include any plans to repair deferred maintenance or repay outstanding debts.

32. The average delinquency amount owed by delinquent co-owners at the Hiawatha East Property is $6,143.

33. The average delinquency amount owed by delinquent co-owners at the Hiawatha West Property is $6,557.

6

34.	As a result, the sale of Hiawatha East and Hiawatha West will save current owners ongoing annual liabilities and delinquent owners of thousands of dollars in delinquent maintenance fees that will not be pursued upon consummation of a sale.

35.	In sum:

a.	with respect to the Debtor, (i) the market shows a negative value for each of the Debtor's individual timeshare interests on their own; and (ii) the Debtor will realize substantial value from a sale of the whole;

b.	with respect to owners in Hiawatha East and Hiawatha West, (i) the market shows their individual interests have negative value, (ii) a sale will provide to current owners some value, albeit modest, (iii) a sale will yield to delinquent owners significant forgiveness of indebtedness; and (iv) a sale will permit all owners to avoid the incurrence of additional future indebtedness to cover the operating expenses and maintenance necessary for each property.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing declaration are true and correct to the best of my knowledge, information, and belief.

Dated: April 6, 2026

*s/ Alexander Krakovsky*
Alexander Krakovsky

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of April, 2025, notice of filing of Unsworn Declaration of Alexander Krakovsky in Support of Motion for Summary Judgment and Entry of Summary Judgment was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices.

/s/ Blake D. Roth
Of Counsel

8

## Exhibit A.
## Current Condition of the Hiawatha Manor and West Properties:

Manor:
Photographs depict the current condition of the Manor property, including visible aging, exterior wear, and deferred maintenance.

**Figure A-1: Exterior view of Hiawatha Manor property showing general condition**



**Figure A-2: Exterior siding and foundation interface condition. Visible rot and decay.**



9

**Figure A-3: Additional exterior perspective of Hiawatha Manor property**



## Hiawatha West Property

Photographs depict the current condition of the West property, including structural elements and exterior condition.

**Figure A-4: Exterior structural view of Hiawatha West property. Deteriorating balcony that is unsafe for owners.**



10

Case 2:25-ap-90052    Doc 51    Filed 04/06/26    Entered 04/06/26 08:52:01    Desc Main
Document      Page 10 of 15

**Figure A-5: Rear elevation and balcony condition at Hiawatha West property. Visible deterioration.**



Case 2:25-ap-90052   Doc 51   Filed 04/06/26   Entered 04/06/26 08:52:01   Desc Main
Document      Page 11 of 15

**Figure A-6: Advanced deterioration of exterior wood siding (rot and material failure).**



**Figure A-7: Additional view of wood siding degradation and structural exposure.**



Case 2:25-ap-90052    Doc 51    Filed 04/06/26    Entered 04/06/26 08:52:01    Desc Main
Document      Page 12 of 15

**Exhibit B**

**Comparable Properties Demonstrating Deferred Action Outcomes**

The following figures illustrate comparable properties where lack of timely intervention resulted in prolonged deterioration and unresolved property disposition. When Lemonjuice was invited, it was already too late to rescue any value.

**Dover Watch at Mount Snow.  Dover, Vermont.**
The Board never decided. It's still there:

**Figure B-1: Dover Watch at Mount Snow – deteriorated structures.**



**Figure B-2: Additional view of Dover Watch property condition**



13

## Eagle Village, Bushkill, PA

**Figure B-3: Eagle Village – exterior condition and deferred maintenance.**

Board was not "comfortable" with filing bankruptcy. Owners walked away.



Case 2:25-ap-90052    Doc 51    Filed 04/06/26    Entered 04/06/26 08:52:01    Desc Main
Document      Page 14 of 15

## Cherokee Resort, Beech Mountain, NC.

We suggested to the city that they have to do the heavy lift of foreclosing the property through the tax sale, including researching and serving all deeded timeshare owners.

**Figure B-4: Cherokee Resort – structural degradation and access conditions.**



**Figure B-5: Additional image of Cherokee Resort condition**



15